IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OSCAR CABA

.V.

UNITED STATES

C. R. NO: 99-045-T

**CABA'S REBUTTAL TO THE GOVERNMENT'S RESPONSE TO HIS MOTION FOR MODIFICATION OR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(2)**

**TREATING § 1B1.10 AND AMENDED 1B1.10 AND 2D1.1 AS MANDATORY VIOLATES 18 U.S.C § 3582(C)(2)**

The first problem with the changes to § 1B1.10 is that they are designed to limit a Court's ability to resentence a Crack defendant in accord with the applicable § 3553(a) factors, thereby requiring the Court to violate its obligation under § 3582(C)(2) to "consider the factors set forth in § 3553(a) to the extent that they are applicable " when reducing the Sentence.

In particular, amended 1B1.10 would require the district court to grant, at most, a two level reduction in every case even if the resulting Sentence would still be greater than necessary to serve the purposes of Sentencing or create unwarranted disparity or otherwise contradict an applicable § 3553(a) factor.

The crack guideline's § 3553(a)- related problems are well known and well documented. In **Kimbrough,** the Supreme Court identified three major issues associated with the differential treatment of crack and cocaine powder offenders, which under the old guidelines " Yielded] Sentences for crack offenses three to six times longer than those for powder offenses involving equal amounts of drugs. **Kimbrough .V. United States,** 128 S.Ct. 558, 566 (2007) (1) the disparity was based on " assumptions about the relative harmfulness of the two drugs " that "more research and data no longer support. **Id** at 558 (citing U.S.S.C. Report to Congress: Cocaine and Federal Sentencing Policy at 91 (May 2002)("2002 Crack Report") and U.S.S.C. Report to Congress: Cocaine and Federal Sentencing Policy at 8 (May 2007) ("2007 Crack Report") (Internal quotation marks omitted). (2) the disparity " leads to the anomalous result that retail Crack dealers get longer Sentences than the wholesale drug distributors who supply them with powder Cocaine from which their Crack is produced," and thus "is inconsistent with " Congressional policy to punish major drug dealers more severely than low level dealers. **Id.** (citing U.S.S.C., Special Report to Congress: Cocaine and Federal Sentencing Policy at 66-67, 174 ( Feb, 1995) ("1995 Crack Report') (Internal quotation marks omitted). and (3) the disparity "factors disrespect for and lack of Confidence in the criminal Justice System because of a widely-held perception that it promotes unwarranted disparity based on race. **Id.** (citing 2002 Crack Report at 103 (Internal quotation marks omitted). The Court also cited the commission's own Conclusions that this disparate treatment of Crack offenders was "generally unwarranted " and "fail[ed] to meet the Sentencing objectives set forth by Congress in both the

Sentencing Reform Act and the **1986** Acts," **Id** at 567-68 (citing 1995 Crack Report at 1 & 2002 Crack Report at iv, 91) (internal quotation marks omitted).

Importantly, the amended guideline does not fully rectify these problems. Quoting the Commission, the Supreme Court wrote that the modest amendment [still] yields Sentence for Crack offenses between two and five times longer than Sentences for equal amounts of powder. **Id.** at 569 (citing Amendments to the Sentencing Guidelines for U.S. Court, 72 Fed. Reg. 29571-72 (2002); and the Commission has recommended that the ratio be " Substantially reduced. **Id.** at 568 (citing 2002 Crack Report at Viii). It also noted that the Commission has described the amendment as "only...a partial remedy' for the problems generated by the Crack/Powder disparity." Id. 569 (citing 2007 Crack Report at 10). And the court found that "[t]he amended guidelines still produce Sentencing ranges keyed to the mandatory minimums in the **1986 Act,"** which was the source of the problems associated with Crack Guidelines in the first place. **Id.** at 569 n. 10.

The guidelines as amended "now advances a Crack/Powder ratio that varies ( at different offense levels) between 25 to 1 and 80 to 1," and the Commission has recommended a ratio of, 20 to 1. **Id** at 573; See also: **Id.** at 569.

Because the amended guideline still results in Sentences that are based on an unwarranted disparity and fails to serve the purposes of Sentencing, a district court cannot automatically assume-as the Commission would have it- that a Sentence under the amended guidelines satisfies § 3553(a). And because the Court has a Statutory obligation to consider the applicable §3553(a) factors when imposing a new Sentence under **§ 3582** (C)(2), the Commission's policy Statement to

the contrary is invalid; 18 U.S.C. § 3582 (C)(2); See also **Stinson,** 508 U.S. **at** 38.

## TREATING AMENDED § 1B1.10 AND 2D1.1 AS MANDATORY VIOLATES BOOKER, AND KIMBROUGH.

Even if the Crack amendment did resolve the § 3553(a) problems with the Crack guideline ( which it clearly did not), revised 1B1.10 would still violate **Booker,** insofar as it renders any part of the guidelines mandatory. **Booker,** made clear that the right to have a Jury find facts that are essential to the punishment "is implicated whenever a Judge seeks to impose a Sentence that is not solely based on facts reflected in the Jury verdict or admitted by the defendant. **Booker,** 543 U.S. **at** 232 (citation and internal punctuation marks omitted) (emphasis added). Many of the defendants who will be resentenced under § 3582 (C)(2) were initially Sentenced on the basis of facts that were neither found by the Jury nor admitted by the defendant. Requiring a Court to impose a new Sentence based on facts that were initially found in violation of the Sixth Amendment would "import" that Sixth Amendment violation into the Sentence.

**Booker,** also made clear that the guidelines cannot be applied as mandatory in some circumstances and not others.

The Court rejected the government's suggestion that it "render the guidelines as advisory in any case in which the Constitution prohibits Judicial fact-finding " but " leave them as binding in all other cases...[W]e do not see how it is possible to leave the guidelines as binding in other cases.

For one thing, the government's proposal would impose mandatory Guideline-type limits upon a Judge's ability to reduce Sentencing, but it would not impose those limits upon a Judge's ability to

increase sentence. We do not believe that such one-way levers are Compatible with Congress' intent." See: **Neal,** 516 U.S. **at** 290, 295. ( Commission "does not have the authority to ⌊effectively⌋ amend ⌊a⌋ Statute " by "interpreting " it in ways contrary to the construction given it by the Supreme Court and the Court will " reject ⌊the commission's⌋ alleged contrary interpretation;" **Stinson,** 508 U.S. **at** 38 ("Commentary in the Guideline Manual that interprets or explains a guideline is authorative unless it violates the Constitution") (emphasis added); **U.S. .V. Hicks,** 472 F.3d **at** 1172-73 ("to the extent that policy statements are inconsistent with **Booker,** by requiring that the guidelines be treated as mandatory, the policy Statements must give way").
Those portions of amended § **1B1.10** that " would impose mandatory guidelines-type limits upon a Judge's ability to reduce Sentences" and would render § **2D1.1** "effectively mandatory" for crack defendants being resentenced under § 3582(C)(2) violates **Booker**, and **Kimbrough**, and are void as a matter of law. See: **Neal,** Supra; See also **Stinson,** Supra.Requiring the guidelines to be treated as advisory in a § 3583-(C)(2) resentencing does not run afoul of cases holding that **Booker,** is not retroactive.
The limitations on giving retroactive effect to new Constitutional rules were designed to protect the system's interest in finality. See: **Teague .V. Lane,**489 U.S. 288, 309 (1989) ("Application of Constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our Criminal Justice System").

In contrast, a § 3582(C)(2) proceedings renders the Judgment not final for the limited purpose of imposing a reduced Sentence. See: **18 U.S.C.** § 3582(b) (" Notwithstanding the fact that a Sentence to imprisonment can Subsequently be modified pursuant to the provision of Subsection (C).....a Judgment of conviction that includes such a Sentence Constitutes a final Judgment for all other purposes")(emphasis added). Put another way, a Judgment of conviction does not constitute a final Judgment for purposes of modifying the Sentence pursuant to § 3582(C)(2) and thus the finality concerns against applying **Booker,** retroactively do not exist in that limited Context . See also: **United States .V. Goines,** 357 F.3d 469, 478 (4th cir. 2004).("the disruption of finality engendered by a broad interpretation of § 3582(C)(2) is Consistent with the legislative design," which anticipates that Sentences will be reopened whenever a guideline amendment is given retroactive effect).

Nor does permitting those resentenced under § 3582 (C)(2) to obtain the benefit of **Booker,** result in disparate treatment vis a vis other inmates who do not have a right to a § 3582(C)(2) resentencing. If as in this case the government attorney argues that it does the Fourth Circuit's response to a Similar Concern raised in a case where a defendant won his habeas petition and was thus entitled to resentencing post-**Booker:**

> " It could certainly be said that Bulter was fortunate that the district court twice Sentenced him incorrectly, thus continuing his case long enough for **Booker,** to be decided before the latest Sentence was imposed. But it is not unusual for temporal happenstance to control whether a Criminal defendant recieves the benefit of a Supreme Court decision. And , Bulter is no less

" deserving " of benefiting from **Booker** then are any of the other defendants who happened to have been Sentenced after **Booker,** was decided. The fact is that when Bulter was sentenced, **Booker,** **had already been decided, and that is all that** matter."

**United States .V. Bulter,** 139 Fed. Appx. 510, 512 (4th cir.2005). Since January 12, 2005, anytime a defendant gets a new Sentence, that Sentence must comply with **Booker** See: **United States .V. Gutierrez-Ramirez,** 405 F. 3d 352, 359 n.4 (5th cir. 2005); **United States .V. Doe,** 398 F.3d 1254, 1261 n.9 (10th cir. 2005); **United States .V. Gleich,** 397 F.3d 608, 615 (8th cir. 2005).

## The Revisions to 1B1.10 Violate the Commission's Statutory obligations under its enabling Statute

The third problem with revised § **1B1.10** is that it violates the commission's obligation under its enabling Statute. The Commission has already acknowledged that the crack amendment represents only a modest interim measure that does not fully rectify the problem with Crack sentences, including that they "fail to meet the Sentencing objectives set forth by Congress," in § 3553(a)(2).
In revising § **1B1.10** to restrict a court's ability to even consider this acknowledged failure of the guideline as amended to satisfy § 3553(a) when imposing a new Sentence under § 3582 (C)(2), the Commission has violated its obligation under 28 **U.S.C.** § **994**(a)(2) to write policy Statments that " further the purposes set forth in Section § 3553(a)(2). See: 28 **U.S.C.** § **994** (a)(2).
It has also violated its obligation to establish Sentencing policies and practices that assure that the purposes of § 3553(a)(2) are met avoid unwarranted Sentencing disparities, maintain sufficient flexibility to permit individualized Sentences, and reflect advancement in the

knowledge of human behavior as it relates to the criminal Justice process. See: **28 U.S.C. § 991**(b)(1)(A)-(C). If guideline commentary " is at odds with " the plain Language of **28 U.S.C. § 994**, the guideline Commentary " must give way." **United States .V. LaBonte,** 520 U.S. 751, 757 (1997).

The amendments are thus void as an improper exercise of Commission authority, in addition to violating the remedial holding in **Booker,** and should be rejected. The government attorney has pointed to the language of § **3582** (C)(2) to argue that the Court does not have Jurisdiction to reduce a Sentence unless that reduction is "consistent with" the Commission's advice in **1B1.10** See: Testimony of Steven L. Chanenson before the U.S Sentencing Commission, Public Hearing on Retroactivity **at** 7-8(Nov. 13, 2007)(relying on § 3582(C)(2)'s language to position that Congress intended district court's to have "no authority" to reduce a term of imprisonment unless the reduction is consistent with the Commissions policy Statment).

This is a misreading of the plain Language of the Statute, and Second, even if Congress did intend to limit the court's ability to disagree with the guidelines in this Context ( as it surely did back in 1984 when § 3582 (C)(2) and the rest of the Sentencing reform Act was passed), that approach is no longer permissible after **Booker**. SEE: **Booker**, 543 U.S. **at** 265 ("We do not doubt that Congress, when it wrote the Sentencing Act, intended to create a form of mandatory Guideline System. But, we repeat, given today's Constitutional holding, that is not a choice that remains open.").

To the extent that revised § **1B1.10** purports to interpret § 3582(C)(2), it is also void under **Stinson,** which rejected the notion that policy

statments and other Commentary should be viewed as Construing the Statute the Commission administers. **Stinson,** 508 U.S. **at** 44. Instead, **Stinson,** held that " the functional purpose of Commentary ( of the kind at issue here) is to assist in the interpretation and application of " the guidelines. **Id. at** 45.

In Contrast, the clear intent of the proposed revisions to § **1B1.10** is to cabin and Control Judicial interpretation of § 3582(C)(2), which in turn violates seperation of powers principles because it is a Judicial function to interpret and apply laws. See: **Marbury .V. Madison,** 5 U.S. 137 (1803) ("It is emphatically the province and duty of the Judicial department to say what the law is.

Those who apply the rule to particular cases must of necessity expound and interpret that rule.

If two laws conflict with each other, the Court must decide on the operation of each").

Mr. Caba understands that: " while § 3582(C)(2) proceedings do not Constitute full resentencing, their purpose is to give the defendant a new Sentence. The resentencing, while limited in certain respects, still results in the "Judge" Calculating a new Guideline range, Considering the § 3553(a) factors and issuing a new Sentence based on the Guidelines in affect at resentencing. Here, the **Booker advisory** regime should be the "Version" of the Sentencing Guidelines in effect, on the date of Mr. Caba's resentencing.

These Guidelines will necessarily include Judicial interpretations by the Supreme Court of the "Constitutional requirement that creates fundamental change," to the framework in question; a requirement of such magnitude that it rendered the Guidelines advisory only.

**Booker,** 543 U.S. at 263, 125 S.Ct. 738. Therefore, an imposition of a Guideline Sentence here without their newly advisory role would be violative of the established principle that the Guidelines as they exist at the time of resentencing is the version to be applied.

Therefore, Mr. Caba states that he should be resentenced under the **Booker,** advisory regime, which prohibits upward Guidelines adjustment based on Judicial fact-finding.

Respectfully Submitted,

Oscar Caba

OSCAR CABA REG # 04697-070
F . M . C . DEVENS,
POST OFFICE BOX 879
AYER, MASSACHUSETTS. 01432-0879

Date 17 March, 2008

CERTIFICATE OF SERVICE

I, Oscar Caba hereby certify that I have served a true and correct copy of the following:

Which is seemed filed at the time it was deliver to prison authorities for forwarding, **Houston v. Lack, 101 L. Ed. 2d 245** ( 1988), upon the defendan[t]s and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to;

To: united states Attorney
District of Rhod IsLand
Fleet center
50 Kennedy Plaza , Eight Floor
Providence, Rhode IsLand 02903

and deposited same in the United States Postal Mail at the 17 day of: March 2008,

Oscar Caba